# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Michael Anthony Della,<br><br>         Plaintiff,<br><br>v.<br><br>Nancy A. Berryhill,<br>Acting Commissioner of Social Security,<br><br>         Defendant. | Case No.: 17cv1374 AJB (PCL)<br><br>**REPORT AND RECOMMENDATION:**<br><br>**DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (doc. 10) and**<br><br>**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (doc. 15).** |

## I. <u>INTRODUCTION</u>

Plaintiff seeks judicial review of the Acting Commissioner of Social Security's final decision denying Plaintiff's application for disability insurance benefits. (Doc. 1.) Plaintiff filed a Motion for Summary Judgment (doc. 10), and Defendant filed a Cross-Motion for Summary Judgment (doc. 15). The Honorable Anthony Battaglia referred the matter to the undersigned judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

1

After a thorough review of all filings and the entire record submitted in this matter, this Court recommends that Plaintiff's Motion for Summary Judgment be DENIED and that Defendant's Cross-Motion for Summary Judgment be GRANTED.

## II. BACKGROUND

Plaintiff Michael Della filed an application for Disability Insurance Benefits and Supplemental Security Income on July 16, 2015, alleging an inability to work beginning September 1, 2014. (A.R. 19.) The matter was initially heard by ALJ Robin L. Henrie on October 21, 2016. (A.R. 19.) Plaintiff, along with Nelly Katsell, an impartial vocational expert, and Roberta Della, Plaintiff's mother, appeared at the hearing. (Id.) The ALJ issued an unfavorable decision on December 27, 2016. (A.R. 19-32.)

In her decision, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since September 1, 2014, the alleged onset date.

2. The claimant has the following severe impairments: adjustment disorder with anxiety; left knee degenerative joint disease; right shoulder degenerative joint disease; chronic sprains in the cervical, thoracic, and lumber spine; fibromyalgia; and somatoform disorders.

3. The claimant does not have an impairment or combination of impairments that meet or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. The claimant has the residual functional capacity (RFC)

to perform the full range of sedentary unskilled work.

4. The claimant is unable to perform past relevant work.

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

6. The claimant has not been under a disability as defined by the Social Security Act from September 1, 2014 through the date of the decision.

Plaintiff appealed, but the Appeal's Council issued an unfavorable decision. Plaintiff filed this action on July 6, 2017. (Doc. 1.) Defendant answered on September 8, 2017. (Doc. 7.) Plaintiff filed a motion for summary judgment (doc. 10), and Defendant filed a cross motion for summary judgment in opposition to Plaintiff's motion for summary judgment (doc. 15). This report and recommendation addresses both motions pending before this court.

### III. ADMINISTRATIVE RECORD

Plaintiff was born in September 1985. (A.R. 652.) Plaintiff enlisted with the United States Navy in July 2008 and served as an U.S. Corpsman deployed in Afghanistan from January to August 2010. (A.R. 883, 884.) Plaintiff was attached to an explosive ordinance disposal unit (EOD). (Id.) In addition to the regular trauma of dealing with the full range of combat casualties, Plaintiff was a victim of three events over the span of three months. (Id.) The first event occurred in May 2010. (Id.) Plaintiff was on foot patrol when an IED

3

detonated less than 100 feet away from him. Plaintiff did not sustain any visible physical injuries, but he did experience a headache for over 24 hours. (Id.) The second event occurred in June 2010. (Id.) Plaintiff was on foot patrol when another large IED was detonated less than 100 feet away from him. He sustained a minor groin injury. (Id.) The third event occurred in July 2010. (Id.) Plaintiff was seated in the rear of the vehicle. The vehicle drove over and detonated an IED. The IED ripped off the wheel under where Plaintiff was seated. Plaintiff had difficulty recalling the events from later that day, but he recalled experiencing a headache for approximately 24 hours and ringing in his ears for approximately 3 hours after the explosion. (Id.)

Following the third event, Plaintiff has been dealing with both mental and physical issues. Plaintiff has both anxiety and PTSD, as well as cognitive issues such as losing his memory, staying on task, completing tasks, and feeling irritability and anger towards others. (Id.) Plaintiff stated that he has intrusive memories when holding his daughter, from a time when he saw three pregnant women "blown up in a car;" however, even after having such thoughts, he told his doctor that he still can get a solid five hours of restful sleep after listening to his daughter's lullaby. (A.R. 1441.) Plaintiff has physical pain including debilitating headaches, low back pain, shoulder pain, and loss of mobility. (A.R. 652.) He has been treated for combat related PTSD, fibromyalgia, chronic pain, insomnia, flashbacks, nightmares, irritability, low back pain, left/right shoulder pain, left knee pain,

4

low testosterone, short term memory loss, decreased concentration/focus, migraine headaches, acid reflux, hypertension systemic, and major depressive disorder. (A.R. 297.)

On April 15, 2016, the Department of Veteran Affairs determined that Plaintiff's mental state disability most closely approximates the criteria for 50 percent disability evaluation, but found that a higher evaluation of 70 percent was not warranted for post-traumatic stress disorder as there was not enough evidence of occupational and social impairments from his symptoms. (A.R. 335.) In April 2014, Plaintiff had complaints of left knee pain and fatigue. (A.R. 404.) In examinations, Plaintiff had evidence of tenderness and pain in his left shoulder without any weakness and without any visible abnormality on imaging studies. (A.R. 496, 500.) Plaintiff also had complaints of headaches, signs of limitations in range of motion, and a slight decrease in strength on occasion. (A.R. 429, 461.) Plaintiff received physical therapy for his shoulder and for lower back pain, which he had complained about since 2011. (A.R. 501.) Eventually, Plaintiff's providers determined his complaints of pain related to his spine were more consistent with spasms than strictly with degenerative changes. (A.R. 1011.) Eventually, Plaintiff's providers indicated that Plaintiff's chronic pain and fatigue would be better explained with a diagnosis of fibromyalgia. (A.R. 1352.)

In November 2015, Plaintiff had a consultative orthopedic examination with Thomas Sabourin, M.D. (A.R. 1778, 1786.) At the time, Plaintiff had normal strength, normal reflexes, normal sensation, and normal range of motion. He had mild tenderness in his

5

knee, but overall, his examination was devoid of abnormalities. In general, physical examinations showed some signs of impairment, such as tenderness and limitations in range of motion, but not more serious signs such as decreased sensation or abnormal reflexes. An x-ray of Plaintiff's brain showed no abnormality to explain Plaintiff's headaches. (A.R. 697, 848.) Plaintiff's shoulder showed signs of worsening slightly, with Plaintiff exhibiting pain in Brien and Neers testing, but objective scans initially continued to show no abnormality. (A.R. 936, 937.) This led to a recommendation that Plaintiff try a cortisone injection, but Plaintiff was not interested in advanced care beyond that level. A later scan did show mild to moderate changes in the acromioclavicular joint. (A.R. 1979, 80.) When Plaintiff's provider tried ketamine infusions to treat his pain, he reported dramatic improvement. (A.R. 2003, 2056, 59.)

Around the alleged onset date, Plaintiff had complaints of mild anxiety without panic symptoms and reported doing well in school, though he did complain of increased sleep disturbance. (A.R. 373 375.) During the mental status examination, Plaintiff demonstrated no significant abnormalities and was diagnosed with adjustment disorder with anxiety. He reported improvement with medication, though he still had anxiety complaints related to his depression symptoms. (A.R. 652-655.) He had ongoing care for his various diagnosis, with minimal changes in reported functioning, though the objective observations continued to show few serious abnormalities. (A.R. 1048.)

On occasion, Plaintiff reported complaints of irritability associated with thoughts of harming others. (A.R. 996.) However, other serious symptoms, such as nightmares, were reported to be decreasing by March 2015. (A.R. 976.) He began reporting intermittent panic attacks in 2015, stating they started in March, and he identified being in crowds and in public as stressors. (A.R. 1643.) In October 2015, Plaintiff attended the archery and golf programs, and he showed motivation and socialized with participants, staff and volunteers. (A.R. 1832.) While Plaintiff was largely being treated for post-traumatic stress disorder, another provider in September 2015 felt that somatoform disorder, NOS, was a better diagnosis, as Plaintiff's symptoms were not coinciding with service-related stressors. (A.R. 2708.) For example, Plaintiff did not report sleep problems until April 2014. (Id.) The provider also felt that Plaintiff's headaches were psychologically medicated. (Id.) In general, Plaintiff consistently presented with normal concentration, judgment, thought process, and memory. (A.R. 2405-2604.) He continued to report symptoms, and he did frequently appear with an altered mood, but treatment notes did not reflect serious symptoms such as suicide attempts, hallucinations, or lack of proper orientation. In some instances, Plaintiff reported activities inconsistent with his allegations. For example, in August 2015, Plaintiff reported going to tai chi, sleeping seven to eight hours, attending a surfing clinic and archery clinic, lifting weights, and swimming. (A.R. 2847, 373, 425, 1299, 1591-92, 1726, 2205-2402, 2405-2604.) Plaintiff also reported taking online classes, purchasing a condo, moving, experiencing his wife's

7

pregnancy, and bringing a new baby into the household. (A.R. 622.) Plaintiff had a mental health examination conducted by Michelle Mahone, Ph.D., in May 2015 at the request of his psychologist Dr. Christian Carter. (A.R. 882.) The results showed signs of greater mental limitations than previously indicated in the record; however, the psychologist noted that Plaintiff's responses were atypical and inconsistent, such that the embedded tests of validity were well outside of normative ranges, and the results were therefore not valid or reliable. (A.R. 882-894, 888.) The psychologist noted that Plaintiff endorsed a much greater than average number of symptoms that are rarely described by individuals with genuine severe psychopathology. (A.R. 888.) He also endorsed an atypical combination of symptoms that is associated with non-credible reporting of somatic and/or cognitive symptoms. (A.R. 888.) Bolstering the psychologist's findings, the record showed that Plaintiff reported in mid-2015 that even when he woke during the night, he could get back to sleep within minutes and that he was able to travel out of town to visit family. (A.R. 1619.)

Based on this record, the ALJ found the following: Plaintiff has not been employed since September 1, 2014. (A.R. 21.) Plaintiff has the following severe impairments: adjustment disorder with anxiety; left knee degenerative joint disease; right shoulder degenerative joint disease; chronic sprains in the cervical thoracic and lumbar spine; fibromyalgia; and somatoform disorders. (A.R 21.) Despite these limitations, Plaintiff had the residual functional capacity to perform the full range of sedentary unskilled work,

with the following limitations: not lifting more than 10 pounds at a time, on more than an occasional basis; not lifting or carrying articles weighing more than 10 pounds, on more than an occasional basis; not standing or walking more than 30 minutes at one time, not totaling more than 2 total hours in an 8-hour workday; not sitting more than 30 minutes at one time, not totaling more than 6 total hours in an 8-hour work day; not working in a stressful environment; and not working at more than a low concentration level and no more than a low memory level. (A.R. 24.)

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms as he described them to medical providers and to the Social Security Administration were not entirely consistent with the medical evidence and other evidence in the record. (A.R. 25.) Although one of Plaintiff's providers, Dr. Robert Sheu, M.D. opined in May 2016, which was one year after treating Plaintiff, that Plaintiff has standing limitations, would be off task, and would be absent once per month but otherwise would be capable of performing low stress work, the ALJ discounted Dr. Sheu's opinion regarding absences as not being consistent with treatment notes showing limited abnormalities. (A.R. 28.) With regard to Plaintiff's other provider, Stephanie Gaines, Psy.D., who opined in January 2016 that Plaintiff had limitations from April 2015 onward, including marked limitations in traveling and performing activities within a schedule and moderate limitations in working with others and completing a normal workweek, the ALJ gave her opinion little to no weight because the limitations as

described were not consistent with treatment notes and the evidence showing that Plaintiff's condition remained largely unchanged. (A.R. 28.) Finally with regard to consultative orthopedic physician Dr. Sabourin's opinion that Plaintiff could perform medium work with postural and manipulative limitations, the ALJ found that Plaintiff had additional limitations beyond what Dr. Sabourin opined regarding sitting and standing and that Plaintiff was limited to sedentary unskilled work. Based on this RFC and the vocational expert's opinion that there were low skill sedentary jobs in the national economy that Plaintiff could perform, the ALJ found that Plaintiff was capable of making a successful adjustment to other work such as a document preparer or eye-glass polisher. (A.R. 31.) Thus, the ALJ concluded that Plaintiff was not disabled from September 1, 2014 to December 27, 2016. (A.R. 31-32.)

**IV. STANDARD OF REVIEW**

To qualify for disability benefits under the Social Security Act, an applicant must show that: (1) he suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of twelve months or more, and (2) the impairment renders the applicant incapable of performing the work that he previously performed or any other substantially gainful employment that exists in the national economy. See 42 U.S.C.A. § 423 (d)(1)(A), 2(A) (West 2004). An applicant must meet both requirements to be "disabled." Id.

A. Sequential Evaluation of Impairments

The Social Security Regulations outline a five-step process to determine whether an applicant is "disabled." The five steps are as follows: (1) Whether the claimant is presently working in any substantial gainful activity. If so, the claimant is not disabled. If not, the evaluation proceeds to step two. (2) Whether the claimant's impairment is severe. If so, the claimant is disabled. If not, the evaluation proceeds to step three. (3) Whether the impairment meets or equals a specific impairment listed in the Listing of Impairments. If so, the claimant is disabled. If not, the evaluation proceeds to step four. (4) Whether the claimant is able to do any work he has done in the past. If so, the claimant is not disabled. If not, the evaluation proceeds to step five. (5) Whether the claimant is able to do any other work. If not, the claimant is disabled. Conversely, if the Commissioner can establish there are significant number of jobs in the national economy that the claimant can do, the claimant is not disabled. 20 C.F.R. § 404.1520; see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

B. Judicial Review

Sections 206(g) and 1631 (c)(3) of the Social Security Act allow unsuccessful applicants to seek judicial review of the Commissioner's final agency decision. 42 U.S.C.A. §§ 405(g), 1383(c)(3). The scope of judicial review is limited. The Commissioner's final decision should not be disturbed unless: (1) the ALJ's findings are based on legal error or (2) are not supported by substantial evidence in the record as a

whole. Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Vasquez v. Astrue, 547 F.3d 1101, 1104 (9th Cir. 2008) (quoting Andrews, 53 F.3d at 1039). Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed. Id. (citation and quotations omitted).

Section 405(g) permits this Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C.A. § 405(g). This matter may also be remanded to the Social Security Administration for further proceedings. Id. Furthermore, "[a] decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## V. DISCUSSION

In his motion, Plaintiff argues that the ALJ's decision improperly gave little to no weight to the treating and examining physicians' opinions and gave too much weight to

12

the non-treating physicians and the vocational expert in finding Plaintiff not disabled. (Doc. 10, at 11.) Ultimately, Plaintiff argues that the ALJ's decision was not supported by substantial evidence because the ALJ ignored Plaintiff's physical, mental, and emotional diagnoses and how they affect his day-to-day living. (Doc. 10, at 13-14.) Defendants argue that the ALJ properly considered the medical opinion evidence, properly discounted the treating physicians' opinions, and supported her decision with substantial evidence. (Doc. 15.)

Disability under the Social Security Act is defined as the "inability to engage in any substantial activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Ordinarily the opinions of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability. In evaluating medical opinions, the regulations distinguish among three types of physicians: 1) treating physicians; 2) examining physicians; and 3) non-examining physicians. 20 C.F.R. § 404.1527. "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001). However, the ALJ is not necessarily bound by the opinion of the treating physician. Smolen v. Chater, 80 F.3d

13

1273, 1285 (9th Cir. 1996). If a treating physician's opinion is contradicted by other opinions, then the ALJ can reject the treating physician's opinion by providing specific and legitimate reasons supported by substantial evidence for doing so. Id. Also, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Furthermore, as an ALJ can reject a claimant's descriptions claiming disability upon "(1) finding evidence of malingering or (2) expressing clear and convincing reasons for doing so," Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003), an ALJ can, in turn, discount a treating physician's opinion that is based on those less than credible statements made by the claimant. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009).

Here, the ALJ properly developed Plaintiff's RFC based on the ALJ's credibility findings as well as the objective medical evidence, examination findings, and opinion evidence. The ALJ gave several reasons for discounting two of Plaintiff's providers, who found greater limitations for Plaintiff than what the ALJ ultimately found based on the record as a whole. With regard to Plaintiff's provider, Dr. Robert Sheu, the ALJ gave some weight to his opinion that Plaintiff could perform low stress work and that he had standing limitations but disagreed that Plaintiff would be off task and would be absent once per month. (A.R. 28.) The ALJ pointed out that Dr. Sheu's overall diagnosis was not supported by the treatment notes; in his checklist, Dr. Sheu did not discuss objective

tests performed or provide records of such tests to support his overall opinion. (A.R. 2915-2919.) Moreover, other limitations opined by Dr. Sheu such as Plaintiff's muscle weakness, chronic fatigue, and inability to walk more than five minutes at a time was contradicted by the record showing Plaintiff's participation in tai chi, surfing, weightlifting, and swimming. (A.R. 27, 2918.)

With regard to Plaintiff's provider, Stephanie Gaines, Psy.D., the ALJ gave little to no weight to her opinion that Plaintiff had marked limitations in traveling and performing activities within a schedule. (A.R. 28.) The ALJ again pointed out that Dr. Gaines' opinion was inconsistent with the record; importantly, instead of discussing objective tests performed to support her opinion, she simply provided her opinions in check-box form. (A.R. 2056-2059.) See Batson v. Comm'r of Soc. Sec., 359 F.3d 1190, 1195 (9th Cir. 2004) (the ALJ properly discounted two treating doctor's opinions because they were in the form of a checklist, did not have supportive objective evidence, were contradicted by other statements and assessments of the claimant's medical condition and were based on the claimant's subjective descriptions of pain.) Similarly, Plaintiff's daily activities of going to tai chi, attending surfing and archery clinics, weightlifting and swimming contradicted Dr. Gaines' opinion that Plaintiff had marked limitations in traveling and performing activities within a schedule.

Both Dr. Gaines and Dr. Sheu's opinions of Plaintiff's limitations were also in stark contrast to the opinion of consultative examining physician Dr. Sabourin, who stated that

15

Plaintiff had a normal gait and posture and that despite complaints of pain, Plaintiff's range of motion in his neck and cervical spine were largely normal and his muscle strength was full (5/5). (A.R. 1780-1783.) Plaintiff's physical examination failed to show more serious signs of impairment such as decreased sensation or abnormal reflexes. (A.R. 1778, 1786.) An x-ray of Plaintiff's brain showed no abnormality to explain Plaintiff's headaches. (A.R. 697, 848.) Plaintiff's shoulder showed signs of worsening slightly, with Plaintiff exhibiting pain in Brien and Neers testing, but objective scans continued to show no abnormality. (A.R. 936, 937.) This led to a recommendation that Plaintiff try a cortisone injection for joint pain, but Plaintiff was not interested in advanced care beyond that level. When Plaintiff's provider tried ketamine infusions to treat his fibromyalgia pain, he reported dramatic improvement. (A.R. 2003, 2056, 59.)

In October 2015, Plaintiff attended the archery and golf programs, and he showed motivation and socialized with participants, staff and volunteers. (A.R. 1832.) While Plaintiff was largely being treated for post-traumatic stress disorder, another provider in September 2015 felt that somatoform disorder, NOS, was a better diagnosis, as Plaintiff's symptoms were not coinciding with service-related stressors. (A.R. 2708.) For example, Plaintiff did not report sleep problems until April 2014. (Id.) The provider also felt that Plaintiff's headaches were psychologically medicated. (Id.) In general, Plaintiff consistently presented with normal concentration, judgment, thought process, and memory. (A.R. 2405-2604.) He continued to report symptoms, and he did frequently

appear with an altered mood, but treatment notes did not reflect serious symptoms such as suicide attempts, hallucinations, or lack of proper orientation. Furthermore, in some instances, Plaintiff reported activities inconsistent with his allegations. For example, in August 2015, Plaintiff reported going to tai chi, sleeping seven to eight hours, attending a surfing clinic and archery clinic, lifting weights, and swimming. (A.R. 2847, 373, 425, 1299, 1591-92, 1726, 2205-2402, 2405-2604.) Plaintiff also reported taking online classes, purchasing a condo, moving, experiencing his wife's pregnancy, and bringing a new baby into the household. (A.R. 622.)

Most critically, the ALJ properly discounted Plaintiff's credibility because of evidence of Plaintiff's malingering in the record. (A.R. 27.) Plaintiff had a mental health examination conducted by Michelle Mahone, Ph.D., in May 2015 at the request of his psychologist Dr. Christian Carter. (A.R. 882.) The results showed signs of greater mental limitations than previously indicated in the record; however, the psychologist noted that Plaintiff's responses were atypical and inconsistent, such that the embedded tests of validity were well outside of normative ranges, and the results were therefore not valid or reliable. (A.R. 882-894, 888.) The psychologist noted that Plaintiff endorsed a much greater than average number of symptoms that are rarely described by individuals with genuine severe psychopathology. (A.R. 888.) He also endorsed an atypical combination of symptoms that is associated with non-credible reporting of somatic and/or cognitive symptoms. (A.R. 888.) Bolstering the psychologist's findings, the record showed that

17

Plaintiff reported in mid-2015 that even when he woke during the night, he could get back to sleep within minutes and that he was able to travel out of town to visit family. (A.R. 1619.)

As the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities even where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed when there is substantial evidence supporting her decision and her decision is free from legal error. In this case, the ALJ properly discounted two of Plaintiff's treating physicians' opinions because they contradicted the treatment notes and were generally unsubstantiated. The ALJ also properly undermined Plaintiff's credibility with evidence of Plaintiff's malingering in the record. In sum, the ALJ's decision finding Plaintiff not disabled was supported by substantial evidence in the record. Thus, Plaintiff's summary judgment motion should be denied and Defendant's summary judgment motion should be granted.

## VI. CONCLUSION

For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **GRANTING DEFENDENT's MOTION AND DENYING  PLAINTIFF's FOR SUMMARY JUDGMENT.**

Any party may file written objections with the Court and serve a copy on all parties on or before **March 22, 2018**.  The document should be captioned "Objections to Report

and Recommendation." Any reply to the Objections shall be served and filed on or before **March 30, 2018**. The parties are advised that failure to file objections within the specific time may waive the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATE: March 7, 2018

Peter C. Lewis
United States Magistrate Judge