UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Michael Anthony Della,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>Nancy A. Berryhill, Acting Commissioner of Social Security,<br><br>　　　　　　　　　　Defendant. | Case No.: 17-cv-1374-AJB-PCL<br><br>**ORDER:**<br>**(1) ADOPTING THE REPORT AND RECOMMENDATION (Doc. No. 17),**<br><br>**(2) DENYING PLAINTIFF'S SUMMARY JUDGMENT MOTION, (Doc. No. 10), and**<br><br>**(3) GRANTING DEFENDANT'S CROSS-SUMMARY JUDGMENT MOTION, (Doc. No. 15).** |

    Plaintiff Michael Anthony Della lodges two objections to the Magistrate Judge's Report and Recommendation regarding Della's social security appeal. However, for both objections, Della fails to show that the Commissioner's findings were not supported by substantial evidence or were made in legal error—a deferential standard this Court is bound by. Although the Court empathizes with Della's symptoms and PTSD flashbacks, the Court ultimately finds the high bar for remand has not been met. Accordingly, the Court **ADOPTS** the findings of the Report and Recommendation, **DENIES** Della's summary

judgment motion, and **GRANTS** the Commissioner's cross-summary judgment motion. (Doc. Nos. 18, 10, 15.)

## I. BACKGROUND

Della seeks judicial review of the Commissioner's denial of Della's application for disability benefits. (Doc. No. 1.) The administrative law judge, ("ALJ"), found Della had several impairments, including "adjustment disorder with anxiety; left knee degenerative joint disease; right shoulder degenerative joint disease; chronic sprains in the cervical, thoracic, and lumbar spine; fibromyalgia; and somatoform disorders." (Doc. No. 8-2 at 22.) The ALJ determined these impairments did not qualify as severe under applicable social security guidelines. (*Id.* at 23.) As such, the ALJ stated Della could perform jobs in the national economy, including as a "document preparer" and an eye glass polisher. (*Id.* at 31–32.) The ALJ concluded that Della "has not been under a disability, as defined in the Social Security Act," and denied him disability insurance benefits. (*Id.* at 32.) Della appealed the Commissioner's decision to this Court, and the Court referred the parties' cross-motions for summary judgment to the Magistrate Judge for a report and recommendation, ("R&R"). Della timely objected to the R&R.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1) set forth a district judge's duties in connection with a magistrate judge's report and recommendation. The district judge must "make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also United States v. Remsing*, 874 F.2d 614, 617–18 (9th Cir. 1989).

An unsuccessful applicant for social security disability benefits may seek judicial review of a final agency decision. 42 U.S.C. § 405(g). However, "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress 'places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for

that of the agency.'" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Accordingly, a reviewing court must "follow three important rules in [its] analysis of the ALJ's decision." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, the Court "leave[s] it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Treichler*, 775 F.3d at 1098. Second, the Court must "disturb the Commissioner's decision to deny benefits 'only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Third, "[e]ven when the ALJ commits legal error, we uphold the decision where that error is harmless, 'meaning that it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Treichler*, 775 F.3d at 1098 (internal quotation marks and citations omitted.)

### III. DISCUSSION

Della objects to the R&R on two grounds: (1) the R&R erred because it penalized Della for "participating in recommended treatments as evidence of his non-disability," and (2) the R&R erred by "prejudicing Mr. Della for the combination of his symptoms." (Doc. No. 18 at 1.)

#### A. Recommended Treatments

Della objects to the R&R claiming it "mischaracterizes the therapeutic adaptive sports for veterans as proof of non-disability." (Doc. No. 18 at 2.) The R&R states: "in August 2015, Plaintiff reported going to tai chi, sleeping seven to eight hours, attending a surfing clinic and archery clinic, lifting weights, and swimming." (Doc. No. 17 at 17.) Della asserts the R&R misused this as evidence that Della has "falsely claim[ed] he has lost physical ability." (Doc. No. 18 at 2.) In finding Della's physical impairments did not meet listing 1.02, the Commissioner pointed to Della's attendance in "clinics for archery, golf, and surfing" as evidence that "he has not lost an ability as required in listing 1.02."

3

(Doc. No. 8-2 at 23.)

Della argues "one of these clinics is described as 'provid[ing] a practical framework for developing & fostering an interest in using the medium of golf to help mitigate negative symptoms related to their illness, injury, or diagnosis.'" (Doc. No. 18 at 2 (quoting Doc. No. 9-3 at 2, Ex. 13F).) Della notes "[t]hese clinics are not for the patients to be actively physical, but instead, to cope with their PTSD and mitigate negative symptoms through various activities." (*Id.*) However, in the same report discussing the golf clinic, it states "[a]ctively participating in this method of treatment can help <u>promote physical exercise</u>" and provides additional benefits such as "improved communication" and "enhanced feelings of well-being." (Doc. No. 9-3 at 2, Ex. 13F (emphasis added).) While Della's doctor notes the goal for his participation in the golf clinic is "to practice independently as part of his recreation therapy community reintegration goal," nevertheless there is a physical aspect which aligns with the Commissioner's findings on Della's physical impairments. (*Id.*) Della analogizes these clinics to the same a paralyzed veteran would use. (Doc. No. 18 at 3.) However, if even a paralyzed veteran participated in a program which was inconsistent with his or her purported limitations as a paralyzed individual, participation in such could still be used in finding a discrepancy with veteran's claims.

While the Court notes Della's point that the clinic's goal was not purely physical in nature, Della did not provide any case law suggesting that participation in these clinics cannot or should not be used in determining physical impairment severity. Thus, the ALJ's use of the fact that Della engaged in physical exercise nonetheless was valid. As the R&R notes, it is the ALJ's job to determine credibility and resolve conflicts such as these. This Court can only overturn the ALJ's findings if they are unsupported by substantial evidence or made in legal error. *See Treichler*, 775 F.3d at 1098. As such, the Court finds Della did not meet that standard. Thus, the Court finds the R&R's analysis agreeing with the Commissioner's finding that Della's physical impairments failed to meet listings in 1.02 or 1.04 based on his participation in such clinics well-reasoned, and **ADOPTS** the

4

conclusion of the R&R with respect to this issue.

## B. Combination of Symptoms

Next, Della asserts the R&R erred by classifying Della's combined impairments as malingering. (Doc. No. 18 at 3.) As evidence that Della's impairments are indeed severe, Della states he has "debilitating migraines," "fibromyalgia," "joints [which] feel like they are on fire," and "severe flashbacks as a part of his PTSD." (*Id.* at 5–6.) After summarizing a series of war-related flashbacks and detailing his PTSD, he argues "[t]hese episodes of decompensation alone should qualify Mr. Della [ ] for SSDI under 12.04 or 12.06." (*Id.* at 6.)

In August 2016, Della did report migraines to his doctor. (Doc. No. 9-12 at 18, Ex. 25F at 4.) However, notes from an appointment the very next month, September 2016, state that "patient stated that he's doing much better, headache resolved with Topamax as ordered." (*Id.* at 23, Ex. 26F at 3.) Regarding his fibromyalgia, although his symptoms include "[c]ognative dysfunction, IBS, muscle pain, insomnia, ringing in the ears, dry eyes, fatigue, depression, anxiety disorder, waking unrefreshed, nervousness, diarrhea, panic attacks, GERD, migraines and sun sensitivity," (Doc. No. 18 at 4), Della's doctor stated he could work, but not at a full-time capacity, and listed limitations Della would be subjected to. (Doc. No. 9-11 at 145, Ex. 23F at 3).

As to these points, the R&R noted that the ALJ found the doctor's notes unsupported by other evidence in the record. (Doc. No. 17 at 14–15.) The R&R states "other limitations opined by Dr. Sheu such as Plaintiff's muscle weakness, chronic fatigue, and inability to walk more than five minutes at a time was contradicted by the record showing Plaintiff's participation in tai chi, surfing, weightlifting, and swimming." (*Id.* at 15.) Moreover, the R&R notes the doctor "did not discuss objective tests performed or provide records of such tests to support his overall opinion." (*Id.* at 14–15.) The Ninth Circuit has found that "[w]hen confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Finally, regarding Della's PTSD, the ALJ's opinion documents conflicting symtoms. On one hand, the ALJ noted Della "consistently presented with normal concentration, judgment, thought processes, and memory." (Doc. No. 8-2 at 28.) The ALJ also stated while Della "frequently appear[ed] with an altered mood," his "treatment notes [did] not reflect serious symptoms such as suicide attempts, hallucinations, or lack of proper orientation." (*Id.*) Della's mental health examination—which showed greater mental limitations than previously indicated in reports—ended up being invalidated and unreliable due to "atypical and inconsistent" responses. (*Id.*) The ALJ also noted that "[b]y mid-2015, the claimant was reporting that even when he woke during the night, he could get back to sleep within minutes." (*Id.*) Finally, the ALJ remarked that Della traveled out of town to see his family. (*Id.*) The ALJ's findings seemingly contradict the severity of Della's symptoms as he asserts them in his objection. (Doc. No. 18 at 5–6.) While the Court certainly sympathizes with Della's PTSD flashbacks, this Court's review is limited: we can only disturb the Commissioner's findings if they are not supported by substantial evidence or are based on legal error. *Treichler*, 775 F.3d at 1098. Accordingly, Della has not met that high threshold. Thus, the Court **ADOPTS** the R&R's conclusions.

## IV. CONCLUSION

Della has not shown the Commissioner's findings were unsupported by substantial evidence or were based on legal error. Moreover, the Court finds the Magistrate Judge's findings were well-reasoned. Thus, the Court **ADOPTS** the Report and Recommendation, (Doc. No. 17), **DENIES** Della's summary judgment motion, (Doc. No. 10), and **GRANTS** the Commissioner's cross-motion for summary judgment, (Doc. No. 15). The Court **ORDERS** the Court Clerk to close the case.

**IT IS SO ORDERED.**

Dated: September 27, 2018

Hon. Anthony J. Battaglia
United States District Judge